.00UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| KEVIN OSBORN, | CIVIL ACTION |
| Plaintiff, | 18-cv-00946 |
| v. | COMPLAINT |
| THE RECEIVABLE MANAGEMENT SERVICES CORPORATION, | JURY TRIAL DEMANDED |
| Defendant. | |

## COMPLAINT FOR RELIEF PURSUANT TO
## THE FAIR DEBT COLLECTION PRACTICES ACT

Now Comes the Plaintiff, KEVIN OSBORN ("Mr. Osborn"), by and through his

attorneys, Whiteside & Goldberg, Ltd., complaining of the Defendant, THE RECEIVABLE

MANAGEMENT SERVICES CORPORATION ("RMS"), as follows:

### NATURE OF THE ACTION

1.    Mr. Osborn brings this action as a consumer to secure redress from unlawful debt

collection practices engaged in by RMS. Mr. Osborn alleges violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §1692 *et seq*. ("FDCPA") and the Telephone Consumer

Protection Act, 47 U.S.C. §227 *et seq* ("TCPA").

2.    Jurisdiction is conferred upon this Court by 15 U.S.C. §1692k(d) (FDCPA), 47

U.S.C. §227(b)(3) (TCPA), and 28 U.S.C. §1331, as this action arises under the laws of the

United States. Declaratory relief is available pursuant to 28 U.S.C. §§2201 and 2202.

3.      Venue and personal jurisdiction are proper in this Court pursuant to 28 U.S.C.

§1391 because RMS conducts business in the Northern District of Illinois and the conduct

complained of occurred within this district.

## PARTIES

4.      Plaintiff, Kevin Osborn ("Mr. Osborn"), is natural person residing in Chicago,

Illinois.

5.      Mr. Osborn is a "consumer," as defined by the FDCPA, 15 U.S.C. §1692a(3).

6.      Defendant, The Receivable Management Services Corporation ("RMS"), is a

Delaware corporation that regularly conducts and transacts business throughout Illinois. RMS's

Illinois registered agent is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago,

Illinois 60604.

7.      RMS is a "debt collector," as defined by the FDCPA, 15 U.S.C. §1692a(6),

because it regularly uses the nationwide credit reporting system, mails and/or the telephone to

collect, or attempt to collect, debts asserted to be owed to another.

8.      At all times relevant to this complaint, RMS was collecting a consumer "debt," as

defined by the FDCPA, 15 U.S.C. §1692a(5).

## FACTS SUPPORTING CAUSE OF ACTION

### Subject Debt and Collection Attempts

9.      On or about June 30, 2017, Mr. Osborn received a letter from RMS demanding

payment in the amount of $3,994.00, allegedly owed to Prudential Insurance Company

("Prudential") for a purported overpayment of long-term disability payments ("subject debt").

*See* Exhibit A, a true and correct copy of the RMS correspondence, dated June 23, 2017

("collection letter").

10. The collection letter contained the thirty-day debt validation notice required by the FDCPA, which was written on the reverse side in light gray ink. *Id.*

11. Around the same time, RMS began to call to Mr. Osborn's cell phone, attempting to collect the subject debt.

12. On July 5, 2017, Mr. Osborn received and answered a call from RMS.

13. After a momentary silence, Mr. Osborn was connected with the RMS representative, to which he identified himself.

14. During the call, Mr. Osborn informed the RMS representative that he disputed the subject debt, that he did not wish to receive calls from RMS, and that RMS should contact his attorney, whose contact information he provided.

15. The RMS representative became hostile and stated, "I don't care if you have an attorney, you need to pay."

16. The RMS representative also threatened to report the subject debt to the credit reporting bureaus.

17. On July 21, 2017, despite his previous request for RMS to stop calling his cell phone, Mr. Osborn received and answered another call from RMS.

18. After a momentary silence, Mr. Osborn was connected to the RMS representative, who again became hostile and took an aggressive tone, demanding Mr. Osborn's employer's information and threatening to garnish his wages.

19. All of the aforementioned collection communications took place during the thirty-day debt validation period prescribed by the FDCPA.

20.     Later that day, Mr. Osborn, through counsel, faxed to RMS written notice that he disputed the subject debt and requested validation pursuant to the FDCPA. *See* Exhibit B, a true and correct copy of Mr. Osborn's dispute, dated July 21, 2017 ("debt dispute").

21.     On November 9, 2017, after the passage of nearly four months, RMS responded to the debt dispute by providing two "validation" documents. *See* Exhibit C, true and correct copies of the documents sent by RMS in response to Mr. Osborn's debt dispute ("RMS debt validation").

22.     The first RMS debt validation document is a letter from Prudential, purportedly sent to Mr. Osborn around May 25, 2017, which requests "reimbursement of the overpayment in the amount of $3,994.00" ("Prudential letter"). *Id*.

23.     In addition to the Prudential letter, RMS also sent an Excel Spreadsheet, entitled "Calculation of Payments," which supposedly provides a break-down of the overpayment allegedly made by Prudential to Mr. Osborn. *Id*.

24.     However, the Calculation of Payments lists an "Overpayment" of $13,835.20, as opposed to the $3,994.00 overpayment claimed in the Prudential letter and RMS's initial collection notice. *See* Exhibits A and C.

25.     The RMS debt validation provides absolutely no clarification as to the legitimacy or accuracy of the subject debt; rather, it only causes more confusion and uncertainty as to the validity of the subject debt – it is misleading and confusing on its face.

26.     That RMS would send such a nonsensical debt validation is demonstrative of its lackluster attitude towards the FDCPA and its mandates.

**Damages**

27.     Due to RMS's illegal conduct, Mr. Osborn now faces the immediate harm of a wrongfully diminished credit rating, as well as the continued confusion and harassment caused by false collection notices and disruptive and invasive calls to his cell phone.

28.     RMS's illegal collection attempts have caused Mr. Osborn emotional distress, as he fears his consumer credit file and credit rating will be ruined by the inclusion of a false collection account and that his wages may be wrongfully garnished.

29.     RMS's unfair collection actions resulted in stress and confusion to Mr. Osborn, forcing him to spend time consulting with his attorneys for clarification and to ensure that RMS's collection efforts cease.

30.     Additionally, as a direct result of RMS's illegal conduct thrust upon him, Mr. Osborn was forced to incur expenses, including costs incurred to dispute the validity of the subject debt and costs associated with the use of his cell phone minutes.

**COUNT I – VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT**

31.     Mr. Osborn repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

32.     RMS violated 15 U.S.C. §§1692c(a)(2), d(5), e(2), e(5), e(8), e(10), and g(b) through its debt collection efforts.

33.     RMS violated 15 U.S.C. §1692c(a)(2) by communicating directly with a consumer it knew to be represented by an attorney with regards to the subject debt. RMS continued to call Mr. Osborn after he advised RMS on July 5, 2017 that he is represented by an attorney with respect to the subject debt.

34.    RMS violated 15 U.S.C. §1692d(5) by repeatedly calling and harassing Mr. Osborn during the initial thirty-day debt validation period – the calls were threatening and served no other purpose than to harass and intimidate.

35.    RMS violated 15 U.S.C. §1692e(2) by misrepresenting the character, amount, or legal status of the subject debt. RMS has provided to different amounts due for the subject debt – both cannot be correct, and the RMS "validation" is confusing on its face.

36.    RMS violated 15 U.S.C. §1692e(5) by threatening to take action that could not legally be taken. RMS cannot garnish Mr. Osborn's wages without a judgment against him.

37.    RMS violated 15 U.S.C. §1692e(8) by threatening to report false and/or unverifiable information to the credit reporting agencies.

38.    RMS violated 15 U.S.C. §1692e(10) by falsely representing that it had validated the subject debt and by vastly overstating the amount of the subject debt.

39.    RMS violated 15 U.S.C. §1692g(b) by overshadowing Mr. Osborn's right to dispute the subject debt. RMS's conduct during the thirty-day debt validation period was inconsistent with Mr. Osborn's right to dispute the subject debt.

40.    The conduct of RMS was inherently unfair and deceptive, demonstrating a willful and reckless disregard towards the FDCPA.

41.    As plead in paragraphs 27 through 30, Mr. Osborn has suffered damages as a result of RMS's illegal collection efforts.

42.    As a result of RMS's violations of the FDCPA, and in consideration of the willful and reckless disregard for the law, Mr. Osborn is entitled to a declaratory judgment that RMS's actions violate the FDCPA, as well as an award of actual damages, statutory damages, legal fees and costs pursuant to 15 U.S.C. §1692k(a)(1), (2) and (3).

WHEREFORE, Plaintiff, KEVIN OSBORN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

    a.   declaring that the practices complained of herein are unlawful and violate the FDCPA;

    b.   awarding Mr. Osborn actual damages in an amount to be determined at trial;

    c.   awarding Mr. Osborn statutory damages of $1,000 as prescribed by the FDCPA;

    d.   awarding Mr. Osborn costs and reasonable attorneys' fees as provided under the FDCPA and;

    e.   awarding any other relief as this Honorable Court deems just and appropriate.

## COUNT II – VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT

43.     Mr. Osborn repeats and realleges paragraphs 1 through 30 as though fully set forth herein.

44.     The TCPA prohibits calling persons on their cell phone, without consent, using an automatic telephone dialing system ("ATDS"). 47 U.S.C. §227(b)(1)(A)(iii).

45.     The TCPA defines ATDS as "equipment which has the capacity…to store or produce telephone numbers to be called, using a random or sequential number generator; and…to dial such numbers." 47 U.S.C. §227(a)(1).

46.     RMS violated the TCPA by placing phone calls to Mr. Osborn's cell phone using ATDS, without his consent.

47.     As plead in paragraphs 27 through 30, Mr. Osborn has suffered damages as a result of RMS's illegal conduct, including costs associated with the use of his cell phone minutes.

48.     Pursuant to 47 U.S.C. § 227(b)(3)(B), RMS is liable to Mr. Osborn for at least $500 per call.

49.     Moreover, pursuant to 47 U.S.C. §227(b)(3)(C), RMS's willful and knowing violation of the TCPA should trigger this Honorable Court's ability to triple the damages to which Mr. Osborn is otherwise entitled.

WHEREFORE, Plaintiff, KEVIN OSBORN, respectfully requests that this Honorable Court enter judgment in his favor as follows:

a.  declaring that the practices complained of herein are unlawful and violate the TCPA;

b.  awarding Mr. Osborn actual damages in an amount to be determined at trial;

c.  awarding Mr. Osborn damages of $500 per phone call pursuant to 47 U.S.C. §227(b)(3)(B);

d.  awarding Mr. Osborn damages of $1,500 per phone call pursuant to 47 U.S.C. §227(b)(3)(C);

e.  awarding any other relief as this Honorable Court deems just and appropriate.


Dated: February 5, 2018                    Respectfully Submitted,

                                           /s/ Daniel J. McGarry
                                           Daniel J. McGarry, Esq. ARDC#6309647
                                           Counsel for Plaintiff
                                           Whiteside & Goldberg, Ltd.
                                           155 N. Michigan Ave., Suite 540
                                           Chicago, IL 60601
                                           Phone: (312) 334-6875
                                           Email: dmcgarry@wglawgroup.com